**Italo TROMBINO and Anna Trombino, d/b/a "Villa Trombino", Plaintiffs,**

**v.**

**TRANSIT CASUALTY COMPANY, Defendant.**

**Civ. A. No. 84–0694–S.**

United States District Court, D. Rhode Island.

April 25, 1986.

Longolucco, Vingi & Sloan, James J. Longolucco, Westerly, R.I., and Asquith, Merolla, Anderson, Ryan & Wiley, Amedeo C. Merolla, Katherine Merolla, Providence, R.I., for plaintiffs.

Gunning, LaFazia & Gnys, Inc., Raymond A. LaFazia, Netti S. Vogel, Raymond A. LaFazia, Jr., Providence, R.I., for defendants Transit Cas. Co. and the Insurers Insolvency Fund.

## MEMORANDUM AND ORDER

SELYA, District Judge.

It was the Scottish poet, Robert Burns, who wrote that:

> The best laid schemes o' mice and men
> Gang aft agley.[1]

This case, in all its permutations, is but one further illustration of that truth. And, the latest turn of events confronts the parties and the court with an exotic question as to the availability of remand in a removed action which has lately run afoul of the imperatives of Fed.R.Civ.P. 19(b).

---

1. R. Burns, *To a Mouse,* st. 7 (1785).

## I. BACKGROUND

The plaintiffs, Italo Trombino and Anna Trombino, husband and wife, operated a restaurant and lounge in Westerly, Rhode Island under the name and style "Villa Trombino." They are citizens and residents of Rhode Island. Desirous of protecting their business assets from a variety of perils, the plaintiffs secured a broad-form policy of risk insurance from the defendant, Transit Casualty Company, a Missouri corporation. On November 21, 1983, while the policy was in force and effect, the Villa Trombino was ravaged by fire.

What next ensued remains blurred by heat and smoke: the plaintiffs claim that they fulfilled the conditions of the policy to no avail; the defendant asserts that they disregarded all semblance of proper protocol vis-a-vis their contractual obligations. Be that as it may, the insureds were admittedly not compensated for the covered losses. They brought suit in the Rhode Island superior court (Washington County) on November 26, 1984, charging Transit with breach of the policy covenants and with bad faith dealings in connection with the claim. *See* R.I.Gen.Laws § 9–1–33. The insurer, spying the presence of diversity of citizenship and the requisite amount in controversy, 28 U.S.C. § 1332(a), seasonably removed the suit to this court. 28 U.S.C. § 1441.

There followed a prolonged period of discovery as the adversaries girded for battle. But, as the trial date drew near, the proceedings were brought to a screeching halt: Transit was petitioned into an insolvency liquidation in a Missouri circuit court and a permanent receiver was appointed. On December 23, 1985, this court vacated the trial assignment. Transit's fiscal woes not only impeded the progress of the Trombino claim, but also triggered the provisions of the so-called Rhode Island Insurers' Insolvency Fund Act (Act), R.I.Gen.Laws §§ 27–34–1—27–34–18.

A brief digression is in order. First enacted in 1970, the Act was designed to

fashion a mechanism whereby, in the event of an insurer's insolvency, some redress would be afforded to certain insureds. The Act created a pooled fund (Fund), R.I.Gen. Laws § 27–34–7, to be used to defray certain claims against some classes of licensed insurance companies doing business in Rhode Island after May 7, 1970. Generally speaking, the benefices of the Act extend to situations wherein "[t]he claimant or insured is a resident of [Rhode Island] at the time of the insured event," R.I.Gen. Laws § 27–34–3(h)(1)(a), or "[t]he property from which the claim arises is permanently located" in Rhode Island. *Id.* at § 27–34–3(h)(1)(b). Though certain types of insurance are beyond the reach of the legislation, *e.g., id.* at § 27–34–3(d)(1)–(7) (life, accident and sickness, credit, title, surety, mortgage guarantee, and ocean marine policies excluded), most property and casualty claims fall within the statutory embrace. In the event of an insurer's insolvency, the Fund steps into the shoes of the bankrupt vis-a-vis covered · claims. R.I.Gen.Laws § 27–34–6. (There are, of course, numerous exceptions and caveats, but none are applicable here.)

The parties to this case do not dispute that the plaintiffs' claim for property loss has become a "covered" one within the contemplation of the Act, R.I.Gen.Laws § 27–34–3(h)(1),[2] that the claim is for less than the $1,000,000 statutory cap, *id.* at § 27–34–6, and that Transit is now an "insolvent insurer." *Id.* at §§ 27–34–3(b), 27–34–4. The plaintiffs, having elected to train their guns on the Fund rather than to struggle within the spartan confines of the receivership, have moved to add the Fund

as a party defendant. Transit's counsel have objected.[3] And, pursuant to an order entered by this court on February 21, 1986, the parties have briefed their views as to the effect of the Fund's emergence on the posture of the case, on this court's jurisdiction, and on the necessity for abstention, dismissal, and/or remand. Oral arguments were entertained on April 10, 1986 relative to both the motion to amend and the show-cause order. The court thereupon took the questions under advisement.

## II. THE APPLICABLE STANDARD

■ In their memoranda and at oral argument, none of the parties adequately addressed the correct legal criteria implicated by the motion to amend. The plaintiffs maintain that their initiative is governed by Fed.R.Civ.P. 15(a) and by that rule's admonition that "leave [to amend] shall be freely given when justice so requires." They conveniently overlook the incontrovertible fact that the only change which their motion seeks to wreak is the addition of a new party defendant. Motions to amend for the sole purpose of adding new parties are rightfully to be scanned not under the general guidelines of Rule 15, but under the case-specific joinder provisions of Fed.R. Civ.P. 19. *Thorp v. Petrola,* 81 F.R.D. 513, 515 (D.W.Va.1979) (whenever addition of party through Rule 15 will offset subject matter jurisdiction, then Rules 19–21 control); *Gordon v. Lipoff,* 320 F.Supp. 905, 922–23 (W.D.Mo.1970) (parties may not be added merely by compliance with Rule 15(a); strictures of specific joinder rules must be observed); *Pacific Gas & Electric Co. v. Fibreboard Products, Inc.,* 116

---

**2.** The parties wrangle as to whether or not the second count of the complaint, which addresses the allegations of bad faith and unfair dealing, R.I.Gen.Laws § 9–1–33, is moot at this point. The Act speaks of a covered claim as being one which is "within the coverage of an insurance policy," R.I.Gen.Laws § 27–34–3(h)(1), and specifically excludes from its prophylaxis "any claim which is in excess of the applicable limits provided in the policy." R.I.Gen.Laws § 27–34–3(h)(3). The defendant, hand in hand with the Fund, believes that this wording forecloses any liability on the Fund's part vis-a-vis count two of the complaint. The plaintiffs hotly contest the

point. The state supreme court has yet to chart the topography of the Act.

**3.** The defense attorneys who had originally appeared for Transit have advised the court that they are now representing the Fund, as the real party in interest. (Although not required by statute, the Fund's usual practice appears to be that, when an insolvency requires the Fund to take over the defense of a matter in midstream, continuity is maintained by keeping prior counsel at the helm.)

F.Supp. 377, 382–83 (N.D.Cal.1953) (Rule 21, rather than Rule 15, controls where a party is to be added; conflicts or ambiguities in the Federal Rules "must be resolved in favor of the specific and against the general"). *Cf. Montgomery v. Rumsfeld,* 572 F.2d 250, 255 (9th Cir.1978) (joinder of additional plaintiffs, though cast in the garb of a motion to amend the complaint, was tantamount to intervention on the facts of the case, and was therefore governed by specific "standards of review corresponding to Rule 24").[4]

The defense exhorts that the court survey this tangled web through the glass of Fed.R.Civ.P. 25(c). That argument is more plausible than the plaintiffs' attempt to invoke Rule 15(a). It fails, however, for two reasons, one judicial and one practical. First, the situation at bar is not tailored to fit the narrow-shouldered model of Rule 25(c), and second, use of that rule in lieu of Rule 19 would, in this case, lead inevitably to an identical result. To make these conclusions plainer, the court defers its perscrutation of the applicability and effect of Rule 25(c) to a later point in this rescript. *See post* at Part III(C).

In fine, it is the court's conclusion that, given the Fund's newly-acquired interest in the outcome of this litigation, the motion to amend demands analysis within the framework erected by Fed.R.Civ.P. 19, a procedural rule which deals specifically with the joinder of persons needed for the just adjudication of particular controversies. The full text of Rule 19, insofar as it is pertinent, is set out in the margin.[5] The court must, at the threshold, parse that rule.

The basic command of Rule 19(a)(1) is a straightforward one: a person must be joined as a party to an action "if in his absence complete relief cannot be accorded among those already parties." The rule cautions, however, that the addition of a new party should be permitted only where "joinder will not deprive the court of jurisdiction over the subject matter of the action." This caveat is designed both to safeguard the interests of existing parties in securing complete relief and to soothe the public interest in avoiding redundant litigation. *Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113, 1115 (7th Cir.1969).

**4.** Although *Gordon* and *Pacific Gas* speak principally in terms of Rule 21, the point is the same. Fed.R.Civ.P. 21 is the master rule which intones that "[p]arties may be dropped or added by order of court ... on such terms as are just." To determine whether or not such addition should occur in certain circumstances, however, the court must look to the particularized criteria of Fed.R.Civ.P. 19. *See Thorp, supra.*

**5.** Fed.R.Civ.P. 19(a) and (b) read as follows:
(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
Fed.R.Civ.P. 19(c) and (d) are not germane to this case.

■ Notwithstanding the limitations of Rule 19(a)(1), all persons who have a substantial interest in the litigation must be made parties whenever necessary to assure that the relief which may be awarded will completely and effectively adjudicate the dispute. *Smith v. Mandel*, 66 F.R.D. 405, 408 (D.S.C.1975). The real rub comes when the presence of such a "necessary" party will destroy the court's jurisdiction—for example, by eliminating complete diversity of citizenship. Rule 19(b) provides salve for such a perfrication. In respect to a person who should be joined, if feasible, but who cannot be made a party because of, say, his adverse impact on the jurisdictional calculus (that is, a "necessary" party whose joinder is for some good reason "not feasible"),[6] the court must determine whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). This subsection of Rule 19 defines what, in an unusual display of forthright judicial nomenclature, has commonly come to be called an "indispensable party." *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968). It is the court's duty to weigh all of the factors specified in Rule 19(b); only if such an assay reveals that the case cannot "in equity and good conscience" proceed without the presence of some one or more persons who should have been joined can the court conclude that the missing link is indispensable. *Id.* at 108–112, 88 S.Ct. at 737–39. If and when such a conclusion becomes inevitable, dismissal normally follows. *Id.*

The taxonymy of the rule sets out a quadrat of elements which must be calibrated in the balance. These ingredients can be summarized as follows:

1) The extent to which a judgment rendered in the missing person's absence

might be detrimental (either to him or to those already parties).

2) The extent to which any such prejudice can be palliated by protective provisions in the judgment, by the shaping of relief, or by kindred measures.

3) The adequacy of a judgment rendered in the missing person's absence.

4) The effect on the plaintiff of a dismissal for nonjoinder.

■ While these factors are guidelines in determining whether a necessary party is indispensable, they are not inflexible benchmarks. *Soar v. National Football League Players' Association*, 65 F.R.D. 531, 536 (D.R.I.1975). At bottom, the quintessential tests are "pragmatism," *Provident Tradesmens*, 390 U.S. at 118, 88 S.Ct. at 742, and "equity and good conscience." Fed.R.Civ.P. 19(b). *See Rousseau v. United States Trust Company of New York*, 422 F.Supp. 447, 451 (S.D.N.Y.1976).

## III. DISCUSSION

It is important not to lose sight of the fact that Rule 19(a), though less critical in this context than Rule 19(b), embraces and delineates all of those persons who should be joined, including those whose joinder is not feasible and those who ultimately might be regarded as indispensable under Rule 19(b). *See Provident Tradesmens*, 390 U.S. at 108–110, 88 S.Ct. at 737–38. So, orchestration of any reasoned analysis in this area demands first that a reviewing court ascertain whether, under Fed.R. Civ.P. 19(a), a person should be joined. Only after that determination has been made affirmatively are the gears of the Fed.R.Civ.P. 19(b) engine engaged to sort out considerations such as feasibility and indispensability.

### A. *Appropriateness of Joinder*

■ It brooks no serious dispute that the Fund is a party without whom "complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1).

---

**6.** Although the case at bar deals with a putative party whose presence, if admitted, would destroy diversity jurisdiction, the precepts of the rule apply with equal force where other good reasons render joinder infelicitous, for example, where the party in question is beyond the forum court's jurisdictional reach. *E.g., Lynch v. Sperry Rand Co.*, 62 F.R.D. 78, 88 (S.D.N.Y.1973).

Transit, now insolvent, is incapable of meeting any verdict which may be rendered against it. Economically, the Fund has become the immediate source of satisfaction of any judgment; it has been mandated by state law to bear the brunt of the plaintiffs' covered claims. *See* R.I.Gen.Laws § 27–34–6, which provides in material part that:

The fund shall be deemed the insurer to the extent of its obligations on covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent....

Thus, in any meaningful economic sense, the Fund is now the real party in interest on the defense side of the case.

State law encourages joinder here in another way as well. R.I.Gen.Laws § 27–34–8(f) declares that: "After determination of insolvency of any insurer, the fund shall be a party in interest in all proceedings involving policies insured or assumed...." Taking the state statutory scheme as a whole, there is not a shadow of a doubt but that the Fund is now a proper party to this suit. It fulfills to the letter both of the substantive Rule 19(a) imperatives: (i) in the Fund's absence, complete relief cannot be accorded among those already parties, and (ii) it is (financially) interested in the covered claims and is so situated that disposition of the suit in its absence might well, as a practical matter, hamper its ability to protect its stake. (The court recognizes that the rule phrases these requirements in the disjunctive; so long as one is met, the other becomes extraneous. Yet, the fact that the Fund is eligible for joinder under both criteria reinforces the appropriateness of the proposed fusion in this instance.) To say that the Fund, under such circumstances, is a proper prospective party shades the lily. Considering its succession to the defendant's covered claim obligations vis-a-vis the plaintiffs, the Fund has become a party whose presence is essential for a just and meaningful adjudication of the merits of the controversy.

■ The matter, however, is not so facilely resolved. Though the Fund is amenable to service of process in this district, it is also a party whose joinder would deprive this court of subject matter jurisdiction. The Fund is an unincorporated association comprised of "all insurers licensed or chartered to issue property and casualty insurance policies" in the state of Rhode Island. R.I.Gen.Laws § 27–34–7. Whenever an unincorporated association, such as the Fund, is examined for diversity purposes, the actual citizenship of each of its members counts toward the determination of the existence of complete diversity. *Baer v. United Services Automobile Association*, 503 F.2d 393, 395 (2d Cir.1974) (insurance association). In this case, some of the member companies which collectively comprise the Fund are incorporated in Rhode Island and/or maintain their principal places of business in Rhode Island. As the parties stipulated on the occasion of the April 10 hearing, four of the seven companies which are presently represented on the Fund's governing board, *see* R.I.Gen.Laws § 27–34–8, have Rhode Island ties of this sort (Allendale Mutual Insurance Co., Pawtucket Mutual Insurance Co., Amica Mutual Insurance Co., and Providence Washington Insurance Co.). It is beyond cavil that the Fund partakes of their "citizenship." Given this attribution, the Fund would be nondiverse vis-a-vis the plaintiffs, both of whom are citizens of Rhode Island. And, the absence of diversity, although newly emergent, would snap the jurisdictional toehold which had originally sustained removal of the suit from the state court. *See Adorno Enterprises, Inc. v. Federated Department Stores, Inc.*, 629 F.Supp. 1565, 1567–71 (D.R.I.1986) (after-added party, if nondiverse, can spoil diversity jurisdiction in removed action).

The defendant's argument that the Fund is a jurisdictional chameleon of sorts, which can by the simple expedient of designating a foreign insurer as a "servicing insurer," R.I.Gen.Laws 27–34–3(c), reinvent diversity whenever it chooses to do so, is disingenuous. Just as the beneficiaries of an estate cannot gain admission to a federal forum

by naming a non-domiciliary as the decedent's personal representative solely to "manufacture" diversity jurisdiction, *McSparran v. Weist*, 402 F.2d 867, 872 (3d Cir.1968), the Fund cannot forum-shop by assigning a member company to front for its welfare. The Federal Rules look to the reality of the interests involved, *see* Fed.R. Civ.P. 17(a), and cannot be bent like so much rubber tubing to fit the jurisdictional designs of a party or of a prospective party. If the rule was otherwise, the lid would be lifted from atop Pandora's jar and diversity jurisdiction, which Congress has carefully and expressly limited, would know few (if any) rational bounds.[7] The Fund must sink or swim in its own right; it cannot hide behind the skirts of a designee of convenience. Thus, since the Fund has become a real party in interest and a party which obviously should be joined, but one whose presence will erode the court's subject matter jurisdiction, the focus of the examination must shift from Rule 19(a) to Rule 19(b).

### B. *Indispensability*

The quadripartite test upon which Rule 19(b) depends, *see ante* Part II, establishes the ossature within which to diagnose whether or not this case, in its present posture, should proceed without the presence of the Fund (an arguably indispensable party). It should be remarked, however, that the fourfold litany of Rule 19(b) enumerates elements which are by no means mutually exclusive—nor are they the only considerations which may (or should) be taken into account in a given case. *Provident Tradesmens*, 390 U.S. at 112, 88 S.Ct. at 739; *Bethell v. Peace*, 441 F.2d 495, 496–97 (5th Cir.1971). In order

not to sacrifice substance on the ritual altar of abstract form, the court must approach the Rule 19(b) inquiry pragmatically, keeping in mind the probable consequences of its determination of indispensability vel non. *Id.*

A sequential review of the Rule 19(b) factors, as reflected by the record in this case, is illuminating. First, it is beyond hope of contradiction that adjudication of the suit in the Fund's absence would to all intents and purposes be a meaningless exercise and would work substantial prejudice not only to the plaintiffs, but also to the Fund. The latter would be deprived of any opportunity to participate in the determination of its liability in a meaningful manner. Similarly, the bankrupt insurer would be put to unwarranted expense [8] and the plaintiffs would doubtless be faced with innumerable procedural obstacles in attempting to satisfy any resultant judgment. R.I.Gen.Laws § 27–34–10, for example, makes payment of any judgment rendered against an insolvent insurer after the insolvency has occurred contingent upon compliance with chapter 14 of title 27 of the Rhode Island General Laws. In turn, R.I.Gen.Laws § 27–14–11 effectively requires, in the case of a foreign insurer such as Transit, that the Fund have an opportunity to appear and contest the claim. *See also* R.I.Gen.Laws § 27–34–8(f).

This scenario slips neatly into the outskirts of the second and third fascicles of the Rule 19(b) calculus. In the Fund's absence, there is simply no way in which this court could conceivably fashion effective relief to avoid the predictable consequences of the prejudice which would necessarily

---

**7.** This sleight-of-hand by which the Fund could, if its counsel's imprecation was accepted, alter its citizenship as rapidly as an actor switches costumes during scene changes, is fanciful not only as a matter of federal procedure, but as a matter of state law as well. Under R.I.Gen. Laws § 27–34–8(e), an "assignee-insurer is … authorized to appeal and defend a claim in a court of competent jurisdiction …, and *do so on behalf of and in the name of the fund.*" (emphasis added). Thus, whatever tricks of the trade may be employed, it is in the final analy-

sis the Fund which must be prepared to surmount the jurisdictional hurdle.

**8.** The court notes, but does not further address, the fact that the Missouri court has purported to enjoin both the prosecution of any suit against Transit and the obtaining of "any judgment against … Transit … or its properties or assets." *See Hall v. Transit Casualty Company*, C.A. No. CV 185–1206CC at 2 (E.D.Mo. Dec. 3, 1985) (order of liquidation and appointment of receiver).

inhere. And similarly, any judgment which might be rendered against the now-bankrupt insurer, in the absence of the Fund, would be inadequate, in that it would be incapable of satisfaction and would result in the necessity for full-bore relitigation of the relevant issues in a separate proceeding to which the Fund was a party. This danger is, of course, heightened by the fact that the Fund does not envision its alleged liability to the plaintiffs as paralleling Transit's in all respects. *See ante* n. 2. Indeed, common sense conduces to the conclusion that the statute which created the Fund was drawn specifically to provide that the Fund be treated as a party in interest, *see* R.I.Gen.Laws § 27–34–8(f), primarily to avoid such unacceptable results.

The last horse which pulls the quadriga focuses on the adequacy of the plaintiffs' remedy. In this instance, it is obvious that another forum is available for the plaintiffs to pursue their rights. The state tribunal is, in fact, a superior forum in the sense that all of the parties who should be joined, can be joined. What is more, the fourth furculum of the Rule 19(b) paradigm is designed to prevent hardship to the plaintiffs. *See* Advisory Committee Note to Rule 19, 39 F.R.D. 89, 93 (1966). In this case, it is the plaintiffs who implore that the Fund be added as a party defendant, despite their foreknowledge (and concession) that doing so will oust this court of subject matter jurisdiction. They urge the court to join the Fund and to remand the suit. On this prong of the test, the court is bound to accept the plaintiffs' (favorable) assessment of the sufficiency of their remedies should the joinder which they so fervently seek ultimately be allowed.

Above and beyond the conventional quartet of factors, other relevant indications strongly favor derailing this suit in the Fund's absence. As a practical matter (for the reasons alluded to above), it makes little or no sense for the plaintiffs to try their case against a defendant which is likely judgment-proof while the (solvent) real party in interest remains on the sidelines. And, this is especially true where it is uncertain that this court can or should press Transit to trial given the outstanding decree of the Missouri tribunal. *See ante* n. 8. A further pragmatic consideration is the dearth of precedent under the Act; the prospect that novel questions of state law may arise in the course of future proceedings herein is not remote. (Indeed, at least two have already reared their heads. One relates to the extension of the Fund's balm to bad faith claims, *see ante* n. 2, and the second, raised by the plaintiffs in their memorandum and at oral argument, questions whether the Rhode Island state legislature has ceded exclusive jurisdiction over suits involving the Fund to the Rhode Island state courts. *See* R.I.Gen.Laws §§ 27–34–10 and 27–14–11.) Principles of comity and federalism make a state forum preferable for the prompt and authoritative resolution of such state law questions. Pragmatically speaking, retention of this case in a federal district court, with the Fund on the outside looking in, is a consummation plainly to be eschewed.

A final observation on this point seems appropriate. Well before the evolution of the Federal Rules, the Supreme Court had limned the dimensions of indispensable party status. In *Barney v. Baltimore City*, 73 U.S. (6 Wall.) 280, 284, 18 L.Ed. 825 (1867), Justice Miller wrote:

> [T]here is a . . . class, whose interests in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed.

As *Barney* teaches, such parties have historically been considered as indispensable. And, it is not without significance that the Fund, on the facts of this case, slips neatly within the integument of the *Barney* elucidation.

In sum, the signposts of Fed.R.Civ.P. 19(b) point unerringly in a single direction: proceed no further in the absence of the Fund. And, commonsense considerations of practicality and comity counsel in favor

of the same result. In "equity and good conscience," *id.*, there is scant reason why this court should not pause.

### C. *The Rule 25(c) Asseveration*

The defendant argues that the court should address the possible joinder of the Fund under the aegis of Fed.R.Civ.P. 25(c), which provides as follows:

> (c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

In the first place, there has been no "transfer of interest" here within the intendment of Rule 25(c). This is not a situation involving, say, a merger, *e.g., DeVilliers v. Atlas Corp.*, 360 F.2d 292, 294 (10th Cir.1966), where the original party no longer exists and another entity has unreservedly assumed its rights and obligations. It is not a suit where a financial instrument has changed hands, thereby necessarily affecting the enforcement of rights. *E.g., Jones v. Village of Proctorville*, 303 F.2d 311, 312–13 (6th Cir.1962). It is not even a case of insolvency or waste where the receiver or trustee in bankruptcy has succeeded to the assets and liabilities of the debtor and can therefore arguably be viewed as a transferee. *Cf. Securities and Exchange Commission v. Wong*, 42 F.R.D. 599, 601 (D.P.R.1967). Rather, Transit's troubles have catalayzed neoteric statutory rights against the Fund. Although the latter may to some extent have become synonymous with the bankrupt vis-a-vis the plaintiffs' claims, *but see ante* n. 2, the Fund, in turn, will become subrogated to the plaintiffs' covered claims upon satisfaction thereof, *see* R.I.Gen.Laws §§ 27–34–8(f), 27–34–11, and will presumably pursue those rights against the insolvent insurer. The statute operates not to alter *ultimate* rights and liabilities, but only to reshape and expand the chain of enforcement. As to covered claims, the

format is no longer simply A versus B; it is now A versus C, with a right over in C's favor (against B) for any sums paid. Transit's permanent receiver remains the authentic transferee of its interests, notwithstanding the impact of the Act.

Even if Transit's insolvency and the resultant triggering of the Fund's obligations could be viewed as a "transfer of interest" within the sweep of Rule 25(c)—a point which this court doubts, *see ante*—such a reading would fail to assist the defendant's cause. Although there is some authority to the effect that substitution of a party under Rule 25(c) is discretionary with the court, *e.g., McComb v. Row River Lumber Co.*, 177 F.2d 129, 130 (9th Cir.1949), the better view appears to be that, so long as a timely motion is filed (as was the case here), the court's discretion "would relate only to *continuation against the original party*." *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir.1977) (dicta; emphasis original), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). Such an interpretation of the rule best comports with the command of Fed.R.Civ.P. 17(a) that "[e]very action shall be prosecuted in the name of the real party in interest;" and the two rules, of course, must be read in pari materia. *See Canister Co. v. Leahy*, 182 F.2d 510, 514 (3d Cir.1950) (the Federal Rules of Civil Procedure "must be considered in relation to one another"); *United States v. Purdome*, 30 F.R.D. 338, 339 (W.D.Mo.1962) ("Each separate rule is related to the general plan of the others and must be so construed."). On this view of Rule 25(c), joinder of the Fund as a party would be obligatory.

Moreover, even if discretionary, Rule 25(c) would strongly suggest joinder here. Inasmuch as a judgment against Transit, in the Fund's absence, could be contested by the latter, *see ante* at Part III(B), the prophylaxis of Rule 25(c) ought properly to be invoked to avoid the spectre of a multiplicity of suits. *Accord Wainwright v. Kraftco Corp.*, 58 F.R.D. 9, 13–14 (N.D.Ga.1973); *Moody v. Albemarle Paper Co.*, 50 F.R.D.

494, 497–98 (E.D.N.C.1970); *cf. Froning's, Inc. v. Johnston Feed Service, Inc.,* 568 F.2d 108, 110 n. 4 (8th Cir.1978) (binding effect of judgment against putative assignor on putative successor in interest considered).

Despite the defendant's ingenious attempt to invoke Rule 25(c), and the ultimate futility of that exercise, *see ante,* this court continues to believe that Rule 19 governs in these precincts. Thus, the ensuing examination of the alternatives for further action will be conducted under the guidance of Fed.R.Civ.P. 19(b). The court notes, however, that the outcome would be no different if a Rule 25(c) analysis was employed from this point forward. *See Grady v. Irvine,* 254 F.2d 224, 226 (4th Cir.1958) (analogizing reexamination of jurisdictional foundation upon Rule 25 substitution to kindred Rule 19(b) reexamination). And, it is perfectly apparent that whether viewed from perspective of Rule 19 or Rule 25(c), the Fund's joinder appears altogether appropriate. In this instance, all roads lead to Rome. The only unanswered question is what action this court should take given the Fund's indispensability.

### D. *Redress*

In ordinary circumstances, this would be the end of the journey. On its face, Rule 19(b) is explicit: where (as here) the court has divined that the case should not proceed in the absence of an indispensable party which cannot feasibly be added, the case should be "dismissed for nonjoinder." So, given the court's determinations that, on the one hand, joinder of the Fund is not feasible, and on the second hand, the case should go no further without the Fund being present, an order of dismissal (without prejudice to the pursuit of state court remedies) would customarily eventuate. *E.g., Small v. Frick,* 40 F.Supp. 778, 781–82 (E.D.S.C.1941) (dismissing action for want of jurisdiction after finding that nondiverse indispensable parties had not been joined). Indeed, such a result was foreordained even prior to the adoption of the Federal Rules. *See Crecelius v. New Albany Machine Mfg. Co.,* 4 F.2d 369, 373 (7th Cir.1924); *Atwood v. Rhode Island Hospital Trust Co.,* 275 F. 513, 516 (1st Cir.), *cert. denied,* 257 U.S. 661, 42 S.Ct. 270, 66 L.Ed. 422 (1921). As was said in *Cohen v. Maryland Casualty Co.,* 4 F.2d 564, 565 (E.D.S.C.1925): "There can be no doubt of the rule in the federal courts that, if the issue arises that parties who are indispensable have not been made, or it should appear during the trial, ..., and if to make them parties would destroy the diversity of citizenship, and thereby oust the jurisdiction of the court, then the court cannot entertain jurisdiction of that case, and should dismiss at once." As noted above, this rule applies in "ordinary circumstances." Yet, there is nothing "ordinary" about the circumstances of this litigation.

One of the aspects of this case which distinguishes it in the Rule 19(b) milieu is that the suit was not born here; rather, it was adopted. The plaintiffs commenced their action in the state superior court and it was thereafter removed by the defendant. In that particular, it departs from the garden-variety Rule 19(b) situation, in which the litigation had its origins in the federal district court. In such typical circumstances, the either/or configuration of Rule 19(b) makes abundant sense; the only viable alternatives are those which the Rule expressly contemplates—retention or dismissal. If diversity (and thus, subject matter jurisdiction) would be destroyed by the addition of a party whom the court, "in equity and good conscience" regards as indispensable, the case should be dismissed. *See, e.g., Acton Co. Inc. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 81–82 (1st Cir.1982). The court is left with no other effective choice.

In a removed action, however, there is a third alternative: remand. And, despite the uninspired language of Fed.R.Civ.P. 19(b), this court is not persuaded that the remand option is inaccessible. Certainly, there is a lacuna in the Rule—the draftsmen plainly overlooked the possibility that a removed case could be caught in the Rule 19(b) snare—but the abiding emphasis on the force of "equity and good conscience"

and the repeated admonition of the caselaw to employ pragmatic means to do substantial justice, *e.g.*, *Bethell*, 441 F.2d at 496–97, suggest that the failure of the Rule to mention remand does not abnegate the possibility.[9]

The reported decisions dealing with this genre of case do not squarely confront this issue. To be sure, in some cases where courts have discovered indispensable parties lurking on the fringes of removed actions, and have ascertained that the cases should proceed no further in their absence, orders of remand have eventuated. *See, e.g., Takeda v. Northwestern National Life Insurance Co.*, 765 F.2d 815, 818 (9th Cir.1985) (indispensable party's absence justified remand to state court); *Nursefinders of Elmwood, Inc. v. Metropolitan Life Insurance Co.*, 109 F.R.D. 4 (N.D.Ill. 1985)(same). But, these courts have assumed—without any discussion—that the power to remand exists. Some courts have tacked in a different direction and have simply dismissed such cases notwithstanding their removed status, noting only that the claimants are at liberty to refile in state fora. *E.g., Dameron v. Deer*, 88 F.R.D. 577, 583 (N.D.Ga.1980) (suit dismissed even though plaintiff moved to remand). These cases, too, shun any discussion of the Rule 19(b) lacuna.

As this court observed at an earlier date, "the scope of a rule is governed by its purpose." *United States v. Cicilline*, 571 F.Supp. 359, 363 (D.R.I.1983) (construing D.R.I.L.R. 43(a)). The manifest aim of Fed.R.Civ.P. 19(b) is to do substantial justice—in the phraseology of the rule, to give all possible weight to considerations of "equity and good conscience." The tocsin has been sounded at the starting gate by Fed.R.Civ.P. 1, which demands that the Rules "be construed to secure the just, speedy,

and inexpensive determination of every action." As Justice Black wrote for a unanimous Court:

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them.... Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

In this case, these salutary principles are dispositive. The mere absence of a specific reference to the power to remand in Rule 19(b) cannot mean that the power has been lost. In a removed action, outright dismissal would accomplish nothing of value: it would merely require the parties to pay empty ritualistic homage to a quirk of draftsmanship by instituting a neoteric state court suit, at added cost both in terms of monetary expense and of further delay. It would, in this case, negate much of the extensive discovery which has taken place and would constitute a profligate waste of time, energy, and resources. Given the one year period for bringing suit routinely inserted into standard fire insurance policies in Rhode Island, *see* R.I.Gen.Laws § 27–5–3 (prescribing that in standard fire insurance policy it shall be provided that no action on the policy will be sustainable "unless commenced within twelve (12) months next after inception of loss"), dismissal might also have the unhealthy side effect of triggering limitations problems. "Equity and good conscience" cannot countenance such absurd results. "If the law is to make sense, the presence or absence of buzz words cannot be issue-determinative." *Migneault v. Heckler*, 632 F.Supp. 153, 158–59, (D.R.I.1985).

■ The "best laid schemes," R. Burns, quoted *ante* at 140, of the parties, all of

---

**9.** This case does not call into question whether a plaintiff's dilatoriness may work a forfeiture of the right to object to removal based on the ostensible absence of an indispensable party. *See Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 252 (5th Cir.1973). Once the earth shifted so that the Fund's potential involvement in this litigation surfaced, Mr. and Mrs. Trombino acted with all due dispatch to focus the court's attention upon the new development. For much the same reasons, this is not a situation where the court can rationally harbor any suspicion that the plaintiffs are seeking to add the Fund as a party defendant for the sole purpose of ruining diversity jurisdiction. *Cf. Adorno Enterprises*, at 1572–73 (discussing applicability of motive test; collecting cases).

whom desire and deserve a prompt adjudication of their rights inter sese, have been frustrated long enough by the strange (entirely unforeseeable) turn this suit has taken in the aftermath of the insurer's financial collapse. The agony need not be prolonged. The court holds, notwithstanding the absence of any express reference in Rule 19(b), that it possesses the right to order this litigation returned to the state court, and that concerns anent the just, fair and speedy adjudication of the rights and obligations of the parties cannot be otherwise accommodated.[10] As the Supreme Court has noted, "[t]he principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the court." Order Adopting Revised Rules of the Supreme Court of the United States, 346 U.S. 945, 946 (1954).

## IV. CONCLUSION

For the reasons stated above, the court holds that the Fund is a proper party to this action within the contemplation of Fed. R.Civ.P. 19(a), and further, that its presence is indispensable to the just resolution of the dispute. Those conclusions having been reached, it is plain that the litigation can no longer proceed in this forum; the court cannot "in equity and good conscience" allow the suit to go forward in the Fund's absence, see Fed.R.Civ.P. 19(b), yet joinder of the Fund would destroy the complete diversity of citizenship upon which

this court's subject matter jurisdiction has heretofore been founded. See Adorno Enterprises, supra (subsequent joinder of nondiverse indispensable party depradates diversity jurisdiction and requires remand); Nursefinders of Elmwood Park, supra (same); Lamar Haddox Contractor, Inc. v. Potashnick, 552 F.Supp. 11, 14 (M.D.La. 1982) (same); South Panola Consolidated School District v. O'Bryan, 434 F.Supp. 750, 754 (N.D.Miss.1977) (same); cf. Soam Corp. v. Trane Co., 506 F.Supp. 302, 307–08 (S.D.N.Y.1980) (using "relation back" principle of Fed.R.Civ.P. 15(c) to achieve like result).

Inasmuch as this is a removed action, however, the court further holds that the case need not be dismissed. Notwithstanding the rather austere language of Rule 19(b), the court has the power to do equity among these combatants. No useful purpose would be served by forcing these plaintiffs to retrace their steps to square one. The course of fundamental fairness and essential justice, given the present predicament, is to return this case to the state tribunal from whence it emanated. And, Rule 19(b), together with 28 U.S.C. 1447(c), permits that road to be travelled.

The plaintiffs' motion to amend their complaint is treated as a motion to add the Fund as a party defendant; so refashioned, the motion is granted.[11] In consequence thereof, the instant action is remanded to the Washington County Superior Court.[12]

---

**10.** Although the court believes that the existence of inherent power to remand under Rule 19(b) cannot be gainsaid, it is equally true that the tenets of 28 U.S.C. § 1447(c), fairly applied, would lead to precisely the same result. That statute, which requires the court to remand if "at any time before final judgment it appears that the case was removed improvidently," id., "dictates remand if jurisdictional defects arise after removal." Adorno Enterprises, at 1568 (emphasis original). As this court observed in Adorno Enterprises, "it is apparent that the language 'removed improvidently', 28 U.S.C. § 1447(c), refers to a condition of improvidence existing at any time, before or after removal." Id., at 1569.

**11.** This court refrains from any comment on the way in which the complaint itself should be reshaped. The question of the Fund's liability

(if any) for Transit's alleged breach of its covenants of good faith and fair dealing under R.I. Gen.Laws § 9–1–33, see ante n. 2, is a virgin question of state law, and is better decided by a Rhode Island court.

**12.** It is possible that the outcome might have differed if the Fund had moved to intervene in this action pursuant to Fed.R.Civ.P. 24. The Fund arguably could have met the requirements of Rule 24(a), thereby falling within this court's ancillary jurisdiction, see Metropolitan Life Insurance Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984); Fetzer v. Cities Service Oil Co., 572 F.2d 1250, 1252–53 n. 3 (8th Cir.1978); Blake v. Pallan, 554 F.2d 947, 956–57 (9th Cir.1977), and permitting retention of the cause without violence to settled tenets of subject matter jurisdiction. But, inasmuch as no effort was made to

The clerk of this court shall forthwith transmit a certified copy of this memorandum and order to the clerk of the state court, and shall otherwise take such action as may be necessary or desirable in order expeditiously to implement remand. The state superior court may proceed to hear and determine the suit. The removal bond previously posted by Transit is discharged. No costs to any party.

*It is so ordered.*

venture forth along the Rule 24 route, that question is best left for another day. Accordingly, the court expresses no opinion thereon.