The TRAVELERS INDEMNITY COMPANY and Charter Oak Fire Insurance Company, Plaintiffs,

v.

Richard A. DINGWELL d/b/a McKin Company, American Policyholders Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and Chicago Insurance Company, Defendants.

Civ. No. 87–0288–P.

United States District Court, D. Maine.

July 27, 1988.

John J. O'Leary, Catherine R. Connors, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., Geraldine Mack, Conrad K. Harper, Simpson, Thacher & Bartlett, New York City, for plaintiffs.

Peter S. Plumb, Portland, Me., for defendant Chicago Ins.

Richard P. Romeo, Smith & Elliott, Saco, Me., for defendant Dingwell.

Robert F. Hanson, Norman & Hanson, Portland, Me., Darrell M. Seife, Siff, Rosen & Parker, New York City, for American Policyholders.

Emily Dickinson, Portland, Me., Rosanna Sattler, Posternak, Blankstein & Lund, Boston, Mass., for National Union Fire.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT DINGWELL'S MOTION TO DISMISS

GENE CARTER, District Judge.

This matter comes before the Court on Defendant Dingwell's motion to dismiss for failure to join indispensable parties. For the reasons set forth below, Defendant's motion shall be granted.

## I. INTRODUCTION

Defendant Richard Dingwell, d/b/a The McKin Company ("Dingwell"), owned and operated a landfill site in Gray, Maine, which is now listed by the United States Environmental Protection Agency as a "Superfund" site pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* Plaintiffs Travelers Indemnity Company and Charter Oak Fire Insurance Company ("Travelers") issued numerous comprehensive general liability insurance policies to Dingwell between 1963 and 1978. The third interested group is comprised of fifteen waste generators and transporters ("the McKin Generator Group" or "the Group"), who have paid for virtually all of the government-mandated environmental cleanup at the site.

In 1977, the Town of Gray ordered Dingwell to cease operations at the McKin site after it discovered that hazardous substances had contaminated groundwater and aquifers throughout the area. Travelers agreed to provide a defense to Dingwell, but expressly reserved all rights to deny indemnification for any and all damages for which Dingwell may be held liable. In light of Travelers' reservation of rights, Dingwell began to negotiate with the Generator Group about apportionment of the cleanup costs.[1] Travelers was aware of the negotiations, and communicated extensively with counsel for the Group, defense counsel for Dingwell, personal counsel for Dingwell, and counsel for Dingwell's excess insurance carriers as to whether Dingwell should enter into the proposed Settlement Agreement. Affidavit of John O'Leary, Jr. at 3–4. Dingwell and the Group eventually executed the Settlement Agreement, under which Dingwell would assume sixty-five percent of the McKin site cleanup costs and consent to the entry of a

---

1. Pursuant to 42 U.S.C. § 9607, both Dingwell and the Group faced the prospect of being strictly, jointly and severally liable for the costs of the cleanup. *See United States v. Bliss,* 667 F.Supp. 1298, 1304, 1313 (E.D.Mo.1987).

judgment ordering him to comply with the terms of the Agreement. Dingwell would also assign to the Group whatever rights he might have to seek damages from his insurers for their failure to indemnify him for his cleanup liabilities. In turn, the Group would agree to compromise its claims for indemnity against Dingwell, and seek satisfaction of Dingwell's obligations solely from the assets that might be available under his insurance policies.[2] Travelers objected to the proposed settlement.

The Group and Dingwell planned to make the Agreement effective as of September 30. By September 24, 1987, Travelers knew that the execution of the Agreement was imminent, and filed this declaratory judgment action on September 28 against Dingwell and the excess insurance carriers.

The first twenty-one claims asserted in Travelers' Complaint *are based upon state law* and seek a declaration that Travelers is not liable to indemnify Dingwell for the cleanup costs. In the twenty-third claim, Travelers seeks an order enjoining Dingwell from consenting to the entry of a judgment against him under the terms of the proposed Settlement Agreement without first giving Travelers reasonable notice and an opportunity to be heard. Simultaneously, Travelers filed a motion for a preliminary injunction. With Defendants' consent, the Court granted the motion for preliminary injunction on September 30, and ordered that Dingwell, until further order of the Court, provide adequate notice to Travelers of any action or motion seeking entry of default judgment against Dingwell relating to the McKin site.

Travelers' twenty-second claim states that "Travelers and Charter Oak are informed and believe that by October 1, 1987, Dingwell will have entered into a settlement agreement with" the McKin Generator Group. Complaint ¶ 76. The Complaint goes on to describe the Agreement, and notes that "Travelers and Charter Oak have not consented to the settlement agreement between Dingwell and the Generator Group because the settlement is unreasonable." *Id.* Travelers claims that Dingwell owed his insurers the duty to cooperate and not to enter into any settlement without first obtaining Travelers' consent, and that

> [t]he settlement agreement between Dingwell and the Generator Group and/or performance of the covenants therein constitute a material breach by Dingwell of one or more of the duties and obligations owed by Dingwell to Travelers and Charter Oak. Travelers and Charter Oak are therefore entitled to a declaration that they are not obligated to indemnify Dingwell with respect to any payments, obligations, expenses, damages, judgments, claims and/or suits addressed in the settlement agreement between Dingwell and the Generator Group.

> 78. The insurance policies issued by Travelers and/or Charter Oak to Dingwell provide coverage for sums which Dingwell becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence. Any payments, obligations, expenses, damages and/or judgments addressed in Dingwell's settlement agreement with the Generator Group do not constitute sums which Dingwell is legally obligated to pay within the meaning of the policies. Travelers and Charter Oak are therefore entitled to a declaration that they are not obligated to indemnify Dingwell with respect to any such payments, obligations, expenses, damages and/or judgments.

*Id.* at ¶¶ 77–78. The Agreement, when fully executed, purported to become effective between Dingwell and the Group on September 30.

Dingwell subsequently filed this motion to dismiss pursuant to Rule 12(b)(1) and (7) of the Federal Rules of Civil Procedure. The Group filed a memorandum as *amici curiae* in support of Dingwell's motion to

---

2. The Group filed their action and a motion for entry of consent judgment on November 2, 1987. *See Amoco Oil Co. v. Dingwell,* Civ. No. 87–329–P (D.Me.). The purpose of the consent judgment is to perfect the Group's right to bring an action against Dingwell's insurers pursuant to the Maine reach and apply statute, 24–A M.R. S.A. § 2904.

dismiss. Counsel for all three parties argued their positions before the Court on June 27.

## II. DINGWELL'S MOTION

Dingwell contends that Travelers' allegations of federal question jurisdiction, which are based solely upon the Complaint's twenty-third claim, are flawed because there remains no justiciable case or controversy. If Dingwell is correct, then the Court's jurisdiction is based exclusively on diversity of citizenship among the parties. Dingwell also asserts that while members of the Group should be joined, under Rule 19(a) joinder of the Group is not feasible because one of the members of the Group, Champion International Corporation, maintains its principal place of business in Connecticut, the same state in which Travelers is incorporated and has its principal place of business.[3] Dingwell asserts that Group members are indispensable parties and the Court should dismiss the case pursuant to the test set forth in Rule 19(b).

## III. JURISDICTION

In its memorandum supporting Dingwell's motion, the Group asserts correctly that Travelers' basis for federal claim jurisdiction is moot. Travelers' only assertion of federal claim jurisdiction arises out of its twenty-third claim, which contends that Travelers' Fifth and Fourteenth Amendment rights will be irreparably harmed if the Court enters a consent judgment against Dingwell without first giving Travelers reasonable notice and an opportunity to be heard with respect to the consent judgment.[4] Complaint, ¶ 82. Travelers sought a "judgment enjoining Dingwell from consenting to the entry of such a default judgment against him without first giving Travelers ... reasonable notice and opportunity to be heard with respect to the commencement of such claim, suit or proceeding, and the proposed and actual entry of such default judgment." Complaint, ¶ 84. Notably, Travelers did not request notice and an opportunity to be heard prior to the Group's action pursuant to Maine's reach and apply statute. Travelers received from this Court an order enjoining Dingwell from entering into a consent judgment without first giving Travelers notice and an opportunity to be heard in opposition to the proposed consent judgment. Dingwell complied with the order by notifying Travelers of the Settlement Agreement and the proposed judgment, and Travelers was provided with a hearing on the proposed consent judgment. Quite simply, the Court has provided Travelers with everything it requested. The Court can grant no further relief pursuant to this count. Thus, there remains no justiciable case or controversy, and the claim is now moot. *See Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974).

---

3. "The statute conferring diversity jurisdiction has long been interpreted to require complete diversity—opposing parties may not be citizens of the same state." *Acton Co., Inc., of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 79 (1st Cir.1982) (citing *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806)). Nor would it be possible to permit the joinder of the fourteen members of the Group who fit the diversity requirement, and require Champion, Travelers, and Dingwell to litigate their claims in a separate action in a different forum. Champion would still be an indispensable party and its absence would require dismissal. Further, splitting the Group would waste judicial resources, force the parties to expend more money and effort litigating the claims, and create the possibility of inconsistent judgments. Instead, the issues should be litigated simultaneously among all the parties in a forum in which all may participate.

4. The purpose of the consent judgment is to perfect the Group's right to bring a reach and apply action pursuant to 24–A M.R.S.A. § 2904. Travelers asserts as a defense against indemnification that Dingwell breached the cooperation clause contained in the policies. However, the Maine Supreme Judicial Court has held that the defenses enumerated in the reach and apply statute are exclusive, *Michaud v. Mutual Fire, Marine & Inland Ins. Co.,* 505 A.2d 786, 788–89 (Me.1986), and breach of a cooperation clause is not an enumerated defense. 24–A M.R.S.A. § 2904. Travelers argues that, assuming the statute is constitutional and does preclude a defense based upon the insured's breach of a cooperation clause, its cooperation clause defense will be irrevocably lost unless it is asserted prior to the entry of default judgment. Complaint, ¶ 82.

Since the twenty-third claim is moot, there remains no basis for federal question jurisdiction. The twenty-two remaining claims are based upon state law, and the Court's jurisdiction is grounded exclusively upon diversity. 28 U.S.C. § 1332.

## IV. JOINDER

The Group argues that the case must be dismissed because of Travelers' failure to join Group members as parties. Rule 19 provides for the joinder of parties to a suit where those parties are needed for a just adjudication. *Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir.1982).

> The Rule furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.

*Id.* In analyzing a joinder question, a court should first ascertain whether, under Fed. R.Civ.P. 19(a), a person should be joined. If the person should be joined but joinder cannot be accomplished, then the Court must determine whether, under Fed.R. Civ.P. 19(b), "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." *See Trombino v. Transit Casualty Co.*, 110 F.R.D. 139, 143 (D.R.I.1986).

Travelers does not dispute that members of the Group qualify as necessary parties under Rule 19(a)(2). Travelers' action seeks to obtain a judicial declaration that its policies do not cover any of Dingwell's obligations to Group members arising out of the Settlement Agreement. In light of the Agreement's provision that the Group will seek to satisfy Dingwell's liability solely from the insurance proceeds, Group members have a direct and substantial interest in assuring that the policies provide coverage. Dingwell's interest in the insurance proceeds is now negligible, since he has assigned the right to the proceeds to the Group and, under the agreement, will not be pursued for any recovery out of his personal assets. Members of the Group are thus "so situated that the disposition of the action in [the Group's] absence may (1) as a practical matter impair or impede [the Group's] ability to protect that interest...." Fed.R.Civ.P. 19(a)(2).[5] In short, members of the Group are parties which obviously should be joined, but the presence of one Group member, Champion International, will eviscerate this Court's subject matter jurisdiction. *Acton*, 668 F.2d at 79. The focus of the examination must therefore shift from Rule 19(a) to Rule 19(b). *Trombino*, 110 F.R.D. at 145.

> Under Rule 19(b), the Court must
>
> determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Fed.R.Civ.P. 19(b). Upon consideration of the four factors, the Court concludes that the Group members are indispensable and the action should be dismissed.

---

**5.** Travelers contends that Group members would be bound by a judicial declaration of Dingwell's rights under the policies; the Group contends that a judgment entered against Dingwell would not be binding, but would rather constitute a "persuasive precedent" in any subsequent action brought by the Group against Travelers under the Maine reach and apply stat-ute, 24–A M.R.S.A. § 2904. The Court does not have to address whether the effect of a judgment will be binding or a "persuasive precedent"; it is sufficient to note that the Group's ability to protect its interests would be impaired by disposing of the matter in the Group's absence.

With regard to the first factor, a judgment rendered in the Group's absence might be extremely prejudicial to the Group. Travelers goes so far as to state that a judgment against Dingwell in this case will have a binding effect on the Group. As noted above, the Group insists that instead of having a binding effect, the judgment against Dingwell would, as a practical matter, impair the Group's prospects for success in a future action against Travelers and would impede its ability to reach a favorable settlement of its claims against Travelers. Under either theory, this factor "weighs heavily in favor of dismissal." *Acton,* 668 F.2d at 81.

Travelers argues that Dingwell will represent the Group's interests adequately. However, the Group's interests are not the same as Dingwell's interests. Dingwell has minimal interest in preserving the insurance proceeds for the benefit of the Group. Moreover, according to the undisputed representation of his personal counsel, Dingwell's financial resources are very limited and he cannot afford to defend himself in this case, let alone assume the task of representing the Group's interests. Accordingly, the Court concludes that the Group could be severely prejudiced by an adjudication of the case in the Group's absence.

The second factor, whether protective provisions may lessen or avoid prejudice, is the most difficult issue. Travelers suggests that the Group is free to seek intervention under Rule 24(a), or may be joined or substituted under Rule 25.

Rule 24 is not an appropriate alternative in this case. The intervention of a nondiverse, indispensable party will destroy a court's jurisdiction. *Ranger Fuel Corp. v. Youghiogheny and Ohio Coal Co.,* 677 F.2d 378, 380–81 (4th Cir.) (citing Wright & Miller, *Federal Practice and Procedure* § 1917), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).[6] *Cf. Acton,* 668 F.2d at 79–80. In the case at bar, Champion, a Group member, would not be permitted to intervene since it is a nondiverse, indispensable party. Thus, Rule 24 does not offer any relief to Travelers.

Travelers next argues that Rule 25(c) applies,[7] since the Settlement Agreement became effective after Travelers filed its Complaint. According to Travelers, "the McKin Group had no protectable interest until after this action was commenced and jurisdiction had attached." The Group, in response, states that Dingwell has not transferred all of his rights under the policies, and that the Rule 19(b) analysis cannot be avoided because one party raced to the courthouse before the effective date of the Settlement Agreement.

In the Court's view, the flaw in Travelers' argument rests in its contention that the Group did not have a protectable interest until the Settlement Agreement became effective. In this declaratory judgment action, the Court may exercise its jurisdiction only when there is "a real and substantial controversy admitting of specific relief." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). By bringing this action, Travelers acknowledged that a genuine controversy existed at the time it filed the Complaint about Travelers' duty to indemnify Ding-

---

**6.** According to 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1917 at 477–78 (1986):

A person who should have been joined in the first instance because he is so related to the action that he is regarded as "indispensable" cannot intervene if his joinder will deprive the court of jurisdiction over the subject matter of the action. The action must be dismissed, as Rule 19(b) requires, if the court concludes that he is so related to the action that he is indispensable. For this reason the courts, in considering an application for intervention by one whose joinder would defeat diversity or otherwise destroy jurisdiction, will examine his relation to the action and allow him in only if he otherwise meets the tests of Rule 24(a)(2) and they are able to conclude that he was not an indispensable party to the original action.

**7.** Rule 25(c) provides, in pertinent part:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

well for any obligations Dingwell made to the Group pursuant to the still unsigned and ineffective Settlement Agreement.[8] Assuming that a dispute over the Settlement Agreement was ripe for adjudication, Group members had a direct and substantial interest in the subject of the action the moment the Complaint was filed. As parties to the Agreement, Group members had a direct interest in the Agreement and the insurance proceeds. The Settlement Agreement provides that the Group's only relief can come from the insurance proceeds, and the declaration sought by Travelers would, according to Travelers, effectively bar Group members from recovering anything from Dingwell. Thus, the Group's interest in the declaratory judgment action realized itself before the Settlement Agreement took effect, and Rule 25(c) does not apply.

The Court concludes that there are no measures available to the Court which could lessen or avoid the prejudice to the Group from a decision made in the absence of its members. Nor has Travelers suggested any means by which the Court could shape the relief in order to avoid possible prejudice. Thus, the second factor also weighs heavily in favor of dismissal.

The third factor under Rule 19(b), whether a judgment entered in the Group's absence will be adequate, incorporates "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmen's Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 738–39, 19 L.Ed.2d 936 (1968). By dismissing this case and permitting the parties to bring their claims in state court, where all members of the Group may be joined, the Court will promote a complete, consistent, and efficient settlement of the case.

Travelers concedes that as to the fourth factor, whether Plaintiff has an alternative forum, a Maine state court could hear this dispute. An action in Maine state court is preferable, because all of the necessary parties could be included and all of the parties would have a forum to litigate fully and fairly.

## V. CONCLUSION

Having weighed the four factors set out in Rule 19(b), the Court can only conclude that the case should be dismissed. Knowing of the imminent execution of the Settlement Agreement, Travelers brought this action to secure a declaration that it was not required to indemnify Dingwell. The members of the Group have a definite and substantial interest in the case, but they were not named as defendants and cannot join the case without divesting this Court of jurisdiction. In considering the policy underlying the Rule, as articulated by the First Circuit in *Acton,* 668 F.2d at 78, the Court finds that "in equity and good conscience" the action should be dismissed.

Accordingly, Defendant's motion to dismiss is hereby GRANTED, and this case is DISMISSED without prejudice to its reassertion in state court.

So ORDERED.

---

8. By September 28, the day that Travelers brought this action, seven generator and transportation companies had signed the Settlement Agreement. By the following day, another six companies and Dingwell had signed the Agreement. The remaining members of the Group signed the Agreement on September 30.