The TRAVELERS INDEMNITY
COMPANY, et al., Plaintiffs,
Appellees,

v.

Richard A. DINGWELL, d/b/a McKin
Company, et al., Defendants,
Appellees (Two Cases).

Appeal of CHICAGO INSURANCE
COMPANY, Defendant.

The TRAVELERS INDEMNITY
COMPANY, et al., Plaintiffs,
Appellants,

v.

Richard A. DINGWELL, d/b/a McKin
Company, et al., Defendants,
Appellees.

Appeal of AMERICAN POLICYHOLD-
ERS INSURANCE COMPANY,
Defendant.

AMOCO OIL COMPANY, et al.,
Plaintiffs, Appellees,

v.

Richard A. DINGWELL, d/b/a McKin
Company, Defendant, Appellee
(Three Cases).

Appeal of CHICAGO INSURANCE
COMPANY, Intervenor.

Appeal of The TRAVELERS
INDEMNITY COMPANY, et
al., Intervenors.

Appeal of AMERICAN POLICYHOLD-
ERS INSURANCE COMPANY,
Intervenor.

Nos. 88–1953 to 88–1958.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1989.

Decided Sept. 7, 1989.

Conrad K. Harper with whom Marc A. Chatman, Geraldine Mack, Simpson Thacher & Bartlett, New York City, John J. O'Leary, Jr., Catherine R. Connors, Benjamin W. Lund and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., were on brief, for The Travelers Indem. Co., et al.

Rosanna Sattler with whom Richard M. Rosenthal, Posternak, Blankstein & Lund, Boston, Mass., Peter S. Plumb and Murray, Plumb & Murray, Portland, Me., were on brief, for appellant Chicago Ins. Co.

James D. Poliquin, Portland, Me., Louis G. Adolfsen, Darrel M. Seife, Ann Marie Forte, Siff, Rosen & Parker, P.C., New York City, and Norman, Hanson & DeTroy, Portland, Me., on brief, for appellant American Policyholders Ins. Co.

William P. Skinner with whom William F. Greaney and Covington & Burling, Washington, D.C., were on brief, for appellees Amoco Oil Co., et al.

Before BOWNES, Circuit Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

This is a consolidated appeal from two separate decisions by the district court. The underlying dispute involves four groups of litigants. From 1963 to 1977, Richard Dingwell, doing business as The McKin Company ("Dingwell"), operated a plant to clean petroleum and chemical storage tanks in the town of Gray, Maine. He took out general liability insurance policies with primary insurers and excess insurers. His primary insurers were Travelers Indemnity Company and Charter Oak Fire Insurance Company (the "primary insurers"). His excess insurers were American Policyholders Insurance Company, Chicago Insurance Company, and National Fire In-

surance Company of Pittsburgh, Pennsylvania (the "excess insurers").[1] The fourth set of litigants consists of fifteen companies that either generated waste or transported it for processing to Dingwell's plant (the "Generator Group" or the "Group").

The factual background of this dispute is relatively straightforward. In 1977, the town of Gray ordered Dingwell's business shut down when it became apparent that hazardous wastes were being dumped at the site. The Environmental Protection Agency ("EPA") and the Maine Department of Environmental Protection ("MDEP") notified Dingwell, as owner and operator of the site, and the generators and transporters of the hazardous waste (including the Generator Group) that they were Potentially Responsible Parties ("PRPs") for the contamination under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and its Maine counterpart, the Uncontrolled Hazardous Substance Sites Law, Me.Rev. Stat.Ann. tit. 38, § 1365. Under these statutes, the PRPs were strictly, jointly and severally liable for all costs incurred in site investigation and cleanup. The insurers agreed to pay Dingwell's legal expenses in connection with these administrative proceedings, but expressly reserved their right to deny indemnification for any and all damages for which Dingwell might be held liable.

To avoid protracted litigation, in 1987 the Generator Group and some 300 other PRPs signed a proposed consent decree with the EPA and MDEP, pursuant to which they were obligated to spend roughly $12.5 million to remedy the effects of the dumping. The Generator Group also sought to negotiate a settlement of their claims for contribution and indemnity against Dingwell. The Group initially sought to negotiate a settlement with Dingwell's insurers, but received no response from them. In May 1987, Dingwell's personal counsel invited

---

1. Despite the fact that they are exposed to different degrees of liability, all the insurance companies have raised substantially the same objections on appeal. Throughout this opinion, we refer to all of the appellants as the "insurers," except when a more specific reference is warranted.

the Group to enter into direct negotiations with Dingwell. The Group stated that it would do so only if Dingwell's insurers denied coverage or reserved the right to deny coverage for the Group's claims. When the insurers reiterated the reservation of their right to deny coverage, the Group entered into direct negotiations with Dingwell. The insurers were invited to participate in these settlement discussions, but refused to do so. Ultimately, the two sides reached the following agreement in September 1988: Dingwell would assume 65% of the cleanup costs, join the Consent Decree, and assign to the Group his indemnification rights against his insurers, in return for which the Group agreed to waive its claims against Dingwell personally and seek satisfaction of Dingwell's obligations solely from assets that might be available under his insurance policies.

The agreement was to take effect on September 30, 1987. The primary insurers, who opposed the settlement, filed a declaratory judgment action in the district court on September 28, 1987 against Dingwell and the excess insurers, seeking a declaration that they were not liable to indemnify Dingwell for the cleanup costs (the "declaratory judgment action"). The complaint contained twenty-two causes of action under state law, and one cause of action under federal law. Dingwell sought to dismiss the complaint because it failed to join indispensable parties—the members of the Generator Group.

On November 2, 1987, members of the Group filed suit in the district court against Dingwell, seeking statutory contribution, common law indemnification, and contractual damages relating to cleanup of the plant site (the "indemnification action"). Pursuant to the settlement agreement between the parties, and with Dingwell's assent, the plaintiffs filed a motion for entry of a consent judgment. The primary and excess insurers moved to intervene to oppose entry of a consent judgment and seek a stay of the proceedings until the previ-

ously filed declaratory judgment action was resolved.

On July 27, 1988, the district court granted Dingwell's motion to dismiss the declaratory judgment action for failure to join indispensable parties. *See Travelers Indemnity Company v. Dingwell,* 691 F.Supp. 503 (D.Me.1988). The court first decided that the insurers' one federal claim was moot, and therefore that the only remaining source of federal court jurisdiction was diversity of citizenship. Joining all members of the Group would eliminate that source of jurisdiction because one of the Group members—Champion International Corporation ("Champion")—had the same jurisdiction as one of the insurers. Because the insurers had conceded that all members of the Group qualified as necessary parties under Fed.R.Civ.P. 19(a)(2),[2] *but see infra* n. 7, the only issue before the court was whether the lawsuit should be dismissed because the Group members were indispensable for purposes of Rule 19(b). After considering the four factors stated in Rule 19(b), the court concluded that the Group members were indispensable and that the action had to be dismissed.

In a separate order issued the same day, the district court denied the insurers' motions to intervene in the indemnification action and granted the Group's motion for entry of a consent judgment. *See Amoco Oil Company v. Dingwell,* 690 F.Supp. 78 (D.Me.1988). The court first held that the insurers were not entitled to intervene as of right under Fed.R.Civ.P. 24(a) or permissively under Rule 24(b).[3] It held that the insurers were not entitled to intervene as of right for two reasons. First, they did not have a significantly protectable interest in the subject matter of the suit. By reserving the right to deny coverage, the insurers relinquished their right to manage Dingwell's defense. The insurers' focus—whether their policies covered Dingwell's obligations—was not directly implicated in an action to determine the extent of Dingwell's obligations. Second, the insurers'

---

**2.** Relevant portions of Fed.R.Civ.P. 19 are reproduced in the appendix.

**3.** Relevant portions of Fed.R.Civ.P. 24 are reproduced in the appendix.

interests would not be impaired by the entry of a consent judgment in their absence. The insurers could raise coverage defenses in any action brought by the Group to enforce the settlement agreement. But even if resolving the case in the absence of the insurers would impair their interests, the court noted that they would not be entitled to intervene because they did not have a direct interest in the main action.

The district court then held that the insurers were not entitled to permissive intervention under Rule 24(b)(1) for the same reasons that they were not entitled to intervene as of right. The court also held that the insurers were not entitled to permissive intervention under Rule 24(b)(2) because there were no independent jurisdictional grounds for their claims and counterclaims.

As regards the motion for entry of a consent judgment, the court scrutinized the agreement closely because of the possibility of collusion between the Group and Dingwell against the insurers. Although it approached the settlement agreement with skepticism, the district court concluded that the liability apportionment was fair because Dingwell was relatively more negli-

gent and less cooperative than the members of the Group.

The primary and excess insurers appeal both rulings by the district court.[4] We affirm, relying to a large extent on the lucid opinions of the district court.

### The Declaratory Judgment Action

The insurers' core contention is that the settlement agreement between Dingwell and the Group only became effective *after* they had filed their action for a declaratory judgment.[5] Consequently, they claim that the district court should have analyzed the joinder question under Fed.R.Civ.P. 25(c), substitution of parties on account of a transfer of interest,[6] instead of under Rule 19. But even if the joinder question should have been analyzed under Rule 19, the insurers claim that the district court's analysis represents an abuse of discretion. The fact that the Group was negotiating a settlement with Dingwell at the time the declaratory judgment action was filed does not mean that the Group members were parties to be joined if feasible for purposes of Rule 19(a).[7] Furthermore, the insurers claim,

---

4. The National Union Fire Insurance Company has not appealed from the district court's order in the declaratory judgment action, and did not seek to intervene in the indemnification action.

5. The insurers also argue that the court erred in determining that their federal claim was moot. The federal cause of action alleged that the insurers' rights under the Fifth and Fourteenth Amendments would be irreparably harmed if the court entered a consent judgment against Dingwell without first giving the insurers reasonable notice and an opportunity to be heard with respect to the consent judgment. *See* Complaint ¶ 82. Without objection from either Dingwell or the Group, the court enjoined Dingwell from entering into a consent judgment without first giving the insurers an opportunity to be heard in opposition to the proposed consent judgment. The insurers were then notified of the settlement agreement and the proposed judgment, and also provided with a hearing. We agree with the district court that the insurers received the relief they requested. Any constitutional violation that existed has been remedied. The federal claim is moot.

It is true that a district court is vested with the discretion to proceed with pendent state-law claims even after the federal claim on which jurisdiction is based is dismissed for mootness. *See Carnegie–Mellon University v. Cohill,* 484

U.S. 343, 108 S.Ct. 614, 618–19 & n. 7, 98 L.Ed.2d 720 (1988). Given the preliminary stage of the lawsuit, and the substantial predominance of state-law issues, the district court was well within its discretion in implicitly deciding that substantial judicial resources would not be saved by proceeding with the action. *See id.;* C. Wright, A. Miller, & E. Cooper, 13C *Federal Practice & Procedure* § 3567.1, at 135–42.

6. Rule 25(c) states, in pertinent part:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

When a federal court has jurisdiction over an action on the basis of diversity of citizenship, it does not lose its subject matter jurisdiction on account of the substitution of a nondiverse party in accordance with Rule 25. *See* C. Wright, A. Miller, & M. Kane, 7C *Federal Practice & Procedure* § 1951, at 523.

7. The insurers claim that they never conceded that the members of the Group represented parties to be joined if feasible for purposes of Rule 19(a), despite the district court's statement to

even if the Group members met the requirements of Rule 19(a), the court abused its discretion in characterizing them as indispensable parties for purposes of Rule 19(b). We address each of these arguments in turn.

▪ The district court rejected the Rule 25(c) argument because it concluded that the Group had a direct and substantial interest in the declaratory judgment action at the moment the complaint was filed and that there was therefore no later transfer of interest to trigger Rule 25(c). We agree with the district court's disposition of this argument. The settlement agreement was a *fait accompli* when the primary insurers filed their declaratory judgment action. Seven members of the Group had signed the agreement on September 28, the date the insurers filed their lawsuit. Six more members and Dingwell signed it the following day, and the remaining members signed it on September 30, the date the agreement was to be effective. *See* 691 F.Supp. at 509 n. 8. It is apparent that the primary insurers filed their lawsuit in response to the settlement agreement. *See* Complaint ¶¶ 77–78. Under these circumstances, we would be blinking at reality if we allowed the effective date of the agreement to control our analysis and regarded the Group members as 'mere potential claimants' to whom an interest later was transferred rather than as interested parties from the outset of the declaratory judgment action.[8] Rule 19 does not require such a myopic and formal approach toward

identifying interested parties. *See Aguilar v. Los Angeles County*, 751 F.2d 1089, 1093 (9th Cir.), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *Hansen v. People's Bank*, 594 F.2d 1149, 1153 (7th Cir.1979). We hold that the district court correctly analyzed the joinder issue under Rule 19.[9]

▪ Having determined that the members of the Group had a concrete interest in the unexecuted settlement agreement at the time the declaratory judgment action was filed, we have no difficulty in agreeing with the district court that the Group members represented parties to be joined if feasible, as described in Rule 19(a).[10] The primary insurers seek a declaration that their policies do not cover any of Dingwell's site cleanup obligations. The settlement agreement provides that Group members can satisfy their contribution claims against Dingwell only from the proceeds of his insurance policies. We have no doubt that the resolution of the declaratory judgment action in the absence of the Group members may, as a practical matter, "impair or impede" the Group's ability to protect its rights under the settlement agreement, Fed.R.Civ.P. 19(a)(2)(i), particularly since the primary insurers claim that a judgment against Dingwell in this case will have a binding effect on the Group, *see* Brief for Appellant Travelers Indemnity Company at 21.

▪ We now turn to the Rule 19(b) issue. On two previous occasions, we explic-

---

the contrary. *See* 691 F.Supp. at 507. The concession issue is moot, however, because the district court made a specific finding that the Group members were persons to be joined if feasible for purposes of Rule 19(a)(2). *See id.*

8. Unlike the primary insurers, we simply do not regard this case as one in which the defendant has tried to destroy diversity jurisdiction after it had attached by transferring his rights in the action to nondiverse entities. If anything, it is the primary insurers who sought to shoehorn their lawsuit into federal court by rushing to file a complaint before all the Group members had a chance to sign the settlement agreement.

9. We do not reach the Group's contention that there was no transfer of interest within the

"intendment of Rule 25(c)." *Trombino v. Transit Cas. Co.*, 110 F.R.D. 139, 147 (D.R.I.1986) (Selya, J.).

10. Although we reversed the district court's Rule 19(a) determination without making an abuse of discretion finding in *Pujol v. Shearson American Express, Inc.*, 877 F.2d 132 (1st Cir.1989), this Circuit has never explicitly decided whether Rule 19(a) determinations by the district court are reviewable *de novo* or only for abuse of discretion. *Cf. Walsh v. Centeio*, 692 F.2d 1239, 1243 n. 4 (9th Cir.1982) (adopting abuse of discretion standard to review Rule 19(a) determination). We see no need to decide the issue here, because we find we can affirm the district court's decision even under the *de novo* review standard that is more favorable to the appellants.

itly found it unnecessary to choose an appropriate standard of review—*de novo* or abuse of discretion—for Rule 19(b) determinations by a district court. *See H.D. Corp. v. Ford Motor Co.*, 791 F.2d 987, 993 n. 8 (1st Cir.1986); *Acton Co., Inc. v. Bachman Foods, Inc.*, 668 F.2d 76, 81 n. 2 (1st Cir. 1982). We address this issue here because it will simplify the resolution of this case. We are guided by the opinions of other federal appellate courts that have already resolved this issue.

The District of Columbia and Ninth Circuits have explicitly decided that Rule 19(b) determinations should be reviewed under an abuse of discretion standard. *See Cloverleaf Standardbred Owners Association, Inc. v. National Bank*, 699 F.2d 1274, 1276–77 (D.C.Cir.1983); *Walsh v. Centeio*, 692 F.2d 1239, 1241–43 (9th Cir.1982); 3A *Moore's Federal Practice* ¶ 19.19–1, at 19–299. The Third, Fifth, and Tenth Circuits have implicitly adopted a similar position. *See Steel Valley Authority. v. Union Switch & Signal Division*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed,* ⸺ U.S. ⸺, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Haas v. Jefferson National Bank*, 442 F.2d 394, 395 (5th Cir.1971); *McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1401 (10th Cir.1987). The Sixth and Seventh Circuits have not expressed a clear preference for either standard of review. *See Local 670, United Rubber Workers of America v. International Union, United Rubber Workers of America*, 822 F.2d 613, 618–19 (6th Cir.1987) (noting that the court has "implicitly adopted the abuse of discretion standard for Rule 19 issues," but stating that the indispensability determination represents a legal conclusion reviewable *de novo*), *cert. denied, Armstrong Rubber Co. v. Local 670, United Rubber Workers of America*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988); *Pasco International Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505–06 n. 22 (7th Cir.1980) ("A Rule 19(b) determination is not one that obviously requires ... deference to the district court although we are willing to accept this stan-

dard for our review of this case."). No Circuit has explicitly decided to review Rule 19(b) determinations under a *de novo* standard of review.

■ We favor the position of the District of Columbia and Ninth Circuits. Rule 19(b) determinations must be based on fact-specific considerations. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968). These determinations are anything but pure legal conclusions. They are not based on "the technical or abstract character of the rights or obligations of the persons whose joinder [is] in question." Advisory Committee Notes on the 1966 Amendments to Rule 19. Instead, they involve the balancing of competing interests and must be steeped in "pragmatic considerations." *Id.* The district court, which is "closer to the arena," is in the preferred position to make these decisions. *See Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 889 (5th Cir. 1968). We hold that its Rule 19(b) conclusions are entitled to deference, and will not be reversed unless they amount to an abuse of discretion.

We now turn to the merits of the Rule 19(b) issue. In his seminal *Provident Tradesmens* opinion, Justice Harlan pointed out that Rule 19(b) is designed to protect four interests.[11] The first is the plaintiff's interest in having a forum. The second is the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability he shares with another. The third interest belongs to the party that should, but cannot, be joined. That party wishes to prevent the proceedings before the court from impairing its rights. The fourth interest is that of the courts and the public in "complete, consistent, and efficient settlement of controversies." 390 U.S. at 111, 88 S.Ct. at 739.

The district court carefully balanced these competing interests before deciding to dismiss the case. With respect to the

---

11. He listed these interests in an order different from that employed in Rule 19(b). *See* 390 U.S. at 109 n. 2, 88 S.Ct. at 738 n. 2.

first interest, the court noted that if the federal lawsuit were dismissed, the insurers could still pursue their claims in state court. The second interest was not meaningfully implicated in this case. With respect to the third interest, the court determined that a judgment rendered in the absence of the Group would be "extremely prejudicial," 691 F.Supp. at 508, noting that it was possible that a judgment against Dingwell could bind the Group. Dingwell would not be able to protect the Group's interests because, *inter alia,* his interests were not the same as those of the Group. With respect to the fourth interest, the court observed that litigating the dispute in state court, where all interested parties could be joined, would lead to the most complete and efficient settlement of the dispute. The court also noted that the primary insurers had not suggested any means by which the court could shape the relief so as to minimize prejudice to the Group. Based on this analysis, the court concluded that the action should, in equity and good conscience, be dismissed.

The insurers offer three reasons why this decision amounted to an abuse of discretion. The first is that the district court drastically overestimated the prejudice to the Group members by overlooking the possibility that they could have been joined as intervenors. Because intervenors as of right need not have an independent basis of jurisdiction, the insurers claim that the lack of diversity between the primary insurers and the members of the Group would not affect the court's jurisdiction over the dispute. They cite *Metropolitan Life Insurance Co. v. Ditmore,* 729 F.2d 1, 9 (1st Cir.1984), to support this proposition. In *Ditmore,* we observed that a party that should be joined if feasible for purposes of Rule 19(a) will normally also qualify as a party who may intervene as of right under Rule 24(a). The insurers seem to claim that *Ditmore* stands for the proposition that a party whose joinder would destroy subject matter jurisdiction but who can intervene as of right can virtually never be indispensable for purposes of Rule 19(b). We reject this interpretation of *Ditmore,* because it would allow parties to circumvent the rules of diversity of citizenship jurisdiction. *See* 3A *Moore's Federal Practice* ¶ 19.01–1[.5–.6], at 19–35 to 19–37; C. Wright, A. Miller, & M. Kane, 7C *Federal Practice & Procedure* § 1917, at 477–79. A court can properly consider ability to intervene when assessing the interest of an absent party for purposes of the indispensability determination under Rule 19(b). But ability to intervene cannot control the indispensability determination, which examines whether a party is an essential part of the controversy before the court. *See* 3A *Moore's Federal Practice* at 19–37; *Takeda v. Northwestern National Life Insurance Co.,* 765 F.2d 815, 820 n. 5 (9th Cir. 1985); *Ranger Fuel Corp. v. Youghiogheny and Ohio Oil Co.,* 677 F.2d 378, 380–81 (4th Cir.), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). "Any other interpretation would leave the parties free to create jurisdiction by arrangement, since the action could be brought by the diverse party with the nondiverse parties as intervenors." 3A *Moore's Federal Practice* at 19–36; *cf. Acton Co., Inc. v. Bachman Foods, Inc.,* 668 F.2d 76, 79 (1st Cir.1982) (noting that if the concept of ancillary jurisdiction were expanded, plaintiffs could resort to artful pleading to circumvent the statutory requirement of complete diversity). The district court did not abuse its discretion when it refused to let the Group members' ability to intervene control its Rule 19(b) analysis.

The insurers' second argument is that the district court overestimated the prejudice to the Group members by ignoring the alternative of joining all Group members except Champion, the nondiverse party. They explain that this alternative would preserve the court's subject matter jurisdiction, while minimizing the prejudice to Champion. Champion's interest amounts to less than four per cent of the Group's total potential recovery from the insurers, is identical to that of the other Group members, and can be adequately represented by them. To support this argument, the insurers cite cases holding that a nonparty is not indispensable when it has interests identical to that of a party.

*See, e.g., Prescription Plan Service Corp. v. Franco,* 552 F.2d 493, 497 (2d Cir.1977). We think the district court properly ignored this alternative. The insurers would have had at least a colorable argument if they had originally included the fourteen diverse Group members in the declaratory judgment action. They chose, however, to omit them, and must now live with the consequences of that choice. The district court conducted its Rule 19(b) analysis in the context of the actual party configuration; it had no obligation to consider alternative configurations that the insurers *could* have chosen. The insurers mistakenly assume that the court must bend over backwards to preserve their right to a federal forum.

The insurers' third argument is that the district court severely underestimated the value to the plaintiffs of a federal forum. The insurers claim that they will not be able to pursue their claim as effectively in Maine's courts. Their reasoning is as follows. The Group intends to sue the insurers under Maine's reach and apply statute, Me.Rev.Stat.Ann. tit. 24–A, § 2904 (1974), under which a judgment creditor may bring an action against an insurer to reach and apply the proceeds of an insurance policy to satisfy a judgment obtained against an insured. They claim that the Maine Supreme Judicial Court has ruled that an insurer may raise only the defenses enumerated in the statute when defending reach and apply actions, citing to *Michaud v. Mutual Fire, Marine & Inland Insurance Co.,* 505 A.2d 786, 788–89 (Me.1986). Consequently, if the insurers commenced a declaratory judgment action against Dingwell and the Group in a Maine court, the Group's expected counterclaim under Maine's reach and apply statute might preclude litigation of certain issues by the insurers. Even if we accept at face value this description of Maine law, we do not understand how the insurers are better off in federal court, because the same substantive law should also apply in that forum. If, as the insurers wish, we were to hold that the Group members were not indispensable for purposes of Rule 19(b), the declaratory judgment action would contin-

ue in federal court. The insurers stated at oral argument that they would not object to intervention of right by the Group members. It is possible that the Group could then file a counterclaim against the insurers under the Maine reach and apply statute. *See* C. Wright, A. Miller, & M. Kane, 7C *Federal Practice & Procedure* § 1921, at 495–96. It is well settled that the federal district court would be obligated to apply Maine law while adjudicating that cause of action, leaving the primary insurers in the same position that they would have been in if the case were tried in state court in the first place. We hold that the district court did not abuse its discretion in concluding that the plaintiffs had a satisfactory alternative forum.

The district court's order dismissing the declaratory judgment action under Rule 19(b) is *affirmed.*

### The Indemnification Action

The insurers challenge the district court's denial of their motions to intervene as of right under Rules 24(a)(1) and 24(a)(2), and permissively under Rules 24(b)(1) and 24(b)(2). They also challenge the district court's decision to enter a consent judgment, and its implicit rejection of their motion for a stay of the proceedings.

 We begin by addressing the Rule 24(a)(2) claim. An applicant who seeks to intervene as of right pursuant to this provision must meet four requirements. First, the application must be timely. Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest. Fourth, the applicant must show that her interest will not be adequately represented by existing parties. *See Moosehead Sanitary District v. S.G. Phillips Corp.,* 610 F.2d 49, 52 (1st Cir.1979). An applicant who fails to meet any one of these requirements cannot intervene as of right under Rule 24(a)(2). *See International Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978).

■ We agree with the district court's conclusion that the insurers failed to satisfy the second requirement—an interest relating to the property or transaction which is the subject of the action.[12] After carefully reviewing the briefs submitted by the insurers, we believe that they could assert three potential interests in the indemnification action. The first is an interest in minimizing Dingwell's liability to the Group. The second is an interest in establishing that the claims against Dingwell are either not covered by his insurance policies or that any claims that existed have been waived. The third is an interest in staying the indemnification action pending the resolution of the declaratory judgment action. We analyze each of these potential interests in turn.

■ There is no precise and authoritative definition of the interest required to sustain a right to intervene under Rule 24(a)(2). *See* 3B *Moore's Federal Practice* ¶ 24.07[2], at 24–57. What is clear, however, is that the intervenor's claim must bear a "sufficiently close relationship" to the dispute between the original litigants. *Id.* at 24–59; *see, e.g., Moosehead Sanitary District,* 610 F.2d at 52–53. The interest must be direct, not contingent. *See Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.,* 725 F.2d 871, 874 (2d Cir.1984); 3B *Moore's Federal Practice* ¶ 24.07[2], at 24–59; *see also Flynn v. Hubbard,* 782 F.2d 1084, 1092 (1st Cir.1986) (Coffin, J., concurring) (noting that interest must be "direct, substantial, and legally protectible").

■ The problem with the first potential interest is that it is contingent. There can be no dispute that an insurer has a direct interest in a lawsuit brought by an injured party against its insured when the insurer admits that the claim is covered by the policy in question. When the insurer offers to defend the insured but reserves the right to deny coverage, however, the insurer's interest in the liability phase of the proceeding is contingent on the resolution of the coverage issue. *See Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.,* 725 F.2d 871, 874–76 (2d Cir.1984); *see also United States Fidelity & Guaranty Co. v. Adams,* 485 So.2d 720, 721–22 (Ala.1986) (Alabama Rules of Civil Procedure); *Kuperstein v. Superior Court,* 204 Cal.App.3d 598, 251 Cal.Rptr. 385, 387 (1988) (California Code of Civil Procedure); *Cromer v. Sefton,* 471 N.E.2d 700, 704 (Ind.App.1984) (Indiana Rules of Trial Procedure); *Donna C. v. Kalamaras,* 485 A.2d 222, 223–24 (Me. 1984) (Maine Rules of Civil Procedure); *Kaczmarek v. Shoffstall,* 119 A.D.2d 1001, 500 N.Y.S.2d 902, 903–04 (1986) (New York Code of Civil Procedure); *cf. Hartford Insurance Co. v. Birdsong,* 69 Md.App. 615, 519 A.2d 219, 221–22 (1987) (same result under local rules of civil procedure when insurer denies coverage). Accordingly, the asserted interest is not cognizable for purposes of Rule 24(a)(2).[13] We do not regard

---

**12.** This Circuit's standard of review for determinations under Rule 24(a)(2) has not been comprehensively determined. *Compare Flynn v. Hubbard,* 782 F.2d 1084, 1086–87 (1st Cir.1986) (stating that the question whether intervention as of right can be granted when the only defendant in the case has not appeared is a legal question reviewable *de novo*) *with Chase Manhattan Bank v. Corporacion Hotelera de Puerto Rico,* 516 F.2d 1047, 1049 (1st Cir.1975) (holding that timeliness determination would be reviewed under an abuse of discretion standard). Fortunately, we do not need to address this issue because we find that we can affirm the district court's order even under the *de novo* standard of review that is more favorable to the appellants.

**13.** The insurers cite the following federal and state cases as supporting a contrary proposition:

*Knapp v. Hankins,* 106 F.Supp. 43, 48 (E.D.Ill. 1952) (allowing insurer to intervene to have coverage issue resolved before the liability issue); *United States v. C.M. Lane Lifeboat Co., Inc.,* 25 F.Supp. 410, 411 (E.D.N.Y.1938) (allowing indemnitor to intervene in action against its indemnitee); *Lawrence v. Burke,* 6 Ariz.App. 228, 431 P.2d 302, 310 (1967) (allowing insurer to intervene to set aside default judgment against insured); *Su Duk Kim v. H.V. Corp.,* 5 Haw.App. 298, 688 P.2d 1158, 1161 (1984) (allowing insurer who reserved right to deny coverage to intervene in suit against insured); *Guaranty Nat'l Ins. Co. v. Pittman,* 501 So.2d 377, 384 (Miss.1987) (same); *Quentin v. Henderson,* 110 N.Y.S.2d 561, 563–64 (Sup.Ct. 1951) (allowing insurer to intervene to obtain a stay pending resolution of the coverage issue). As explained in *Restor–A–Dent, see* 725 F.2d at 875–76 & n. 4, many of these cases can be

this conclusion as overly "legalistic" or "mechanical." *Guaranty National Insurance Co. v. Pittman,* 501 So.2d 377, 384 (Miss.1987). Instead, we view it as reflecting the well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party. *See Cay Divers, Inc. v. Raven,* 812 F.2d 866, 870 (3d Cir.1987); *United Services Automobile Association v. Morris,* 154 Ariz. 113, 741 P.2d 246, 252 (1987); *Three Sons, Inc. v. Phoenix Insurance Co.,* 357 Mass. 271, 257 N.E.2d 774, 777 (1970); *Butters v. City of Independence,* 513 S.W.2d 418, 424 (Mo.1974); J. Appleman, 7C *Insurance Law & Practice* § 4686, at 176; A. Windt, *Insurance Claims and Disputes* § 4.24, at 188 (2d ed. 1988). Allowing the insurer to intervene to protect its contingent interest would allow it to interfere with and in effect control the defense.

Such intervention would unfairly restrict the insured, who faces the very real risk of an uninsured liability, and grant the insurer "a double bite at escaping liability." *Morris,* 741 P.2d at 251.

The manner in which the lawsuit between the insured and the injured party is resolved does not affect the preceding analysis. The insurers' interest remains contingent regardless of the fact that the settlement agreement provided that the resulting judgment could not be enforced against Dingwell personally.[14] The alleged collusiveness of the settlement agreement may well be relevant in deciding whether the insured has breached its obligations under the policy[15] or in deciding whether the consent judgment is binding on the insurer,[16] but those substantive issues of insurance law are not before us today. The proper place to raise them, it seems to us, is during an action to determine wheth-

distinguished. We respectfully disagree with the reasoning and result of those that cannot.

**14.** The insurers claim that it was inconsistent for the district court to find that they had "no interest" in the settlement agreement while simultaneously applying a heightened standard of scrutiny in reviewing that agreement, ostensibly to protect them. Brief for Appellant Travelers Indemnity Company at 40. The problem with this argument is that the district court did not find that the insurers had *no* interest in the settlement agreement. Instead, he found that their interest was too contingent to be cognizable under Rule 24(a)(2). To us, applying heightened scrutiny when reviewing the settlement agreement seems perfectly consistent with this finding.

**15.** The effect for policy purposes of a settlement agreement that cannot be enforced against the insured personally varies. Some jurisdictions suggest that such an agreement breaches the duties imposed on the insured by the policy. *See, e.g., Sargent v. Johnson,* 551 F.2d 221, 232 (8th Cir.1977) (Minnesota law) (describing settlement agreement that imposed no detriment on insured as the antithesis of the mutual respect for rights that is the foundation of insurance contracts). Other jurisdictions hold that such an agreement does not breach the insured's policy obligations unless the insurer is actually prejudiced or deprived of a valid defense by the actions of its insured. *See Ideal Mutual Insurance Co. v. Myers,* 789 F.2d 1196, 1203 (5th Cir.1986) (Texas law). Others hold that the cooperation clause of the policy requires the insured to give the insurer notice of settlement opportunities and the option to par-

ticipate in negotiations. *See Gates Formed Fibre Products, Inc. v. Imperial Casualty & Indemnity Co.,* 702 F.Supp. 343, 347 (D.Me.1988) (Maine law); *see also United Services Automobile Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246, 252 (1987) (holding that the insured must notify the insurer of the settlement agreement).

**16.** The enforceability of a consent judgment for which an insured is not personally liable also varies. *See* J. Appleman, 7C *Insurance Law & Practice* § 4714, at 538 & n. 46. Some jurisdictions hold that such an agreement is *per se* unreasonable, arguing that it can never be enforced against an insurer because the insured is not personally responsible for the ensuing consent judgment. *See, e.g., Freeman v. Schmidt Real Estate & Insurance, Inc.,* 755 F.2d 135, 139 (8th Cir.1985) (Iowa law); *Bendall v. White,* 511 F.Supp. 793, 794–95 (N.D.Ala.1981); *Huffman v. Peerless Ins. Co.,* 17 N.C.App. 292, 193 S.E.2d 773, 774, *cert. denied,* 283 N.C. 257, 195 S.E.2d 689 (1973); *Stubblefield v. St. Paul Fire & Marine Ins. Co.,* 267 Or. 397, 517 P.2d 262, 264 (1973) (en banc); *see also Roach v. Estate of Ravenstein,* 326 F.Supp. 830, 839 (S.D.Iowa 1971) (characterizing settlement agreement which failed to impose detriment on insured as unconscionable and void for lack of consideration). Other jurisdictions hold that such an agreement is not *per se* collusive, and that the plaintiff claimant has the burden of proving that the settlement was reasonable and prudent. *See, e.g., United Services Automobile Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246, 253–54 (1987); *Miller v. Shugart,* 316 N.W.2d 729, 734–36 (Minn.1982).

er the claim is covered by the policy or during an action to enforce the consent judgment against the insurer.

The problem with the second potential interest—that there is no coverage or that whatever coverage exists has been waived—is that it is not related to the subject matter of the action between the Group and Dingwell. *See Restor–A–Dent,* 725 F.2d at 874–76; *see also Adams,* 485 So.2d at 722 (Alabama law); *Kuperstein,* 251 Cal.Rptr. at 387 (California law); *Donna C.,* 485 A.2d at 223 (Maine law). This lawsuit involves the apportionment of tort liability, not the respective rights and obligations of an insured and his insurers under their insurance policy. The insurers fervidly argue that the indemnification action was not intended to determine Dingwell's liability to the Group (they claim that the settlement agreement accomplished that purpose), but instead to perfect the Group's right to bring a reach and apply action against the insurers. When the action is viewed in this manner, they explain, there can be no doubt that they have a direct interest in ensuring that a proper predicate is laid for the reach and apply action. We are not persuaded by this argument. The reason that the consent judgment is a predicate to the reach and apply action is because it lends a judicial imprimatur to the settlement agreement. The impact of the consent judgment on a future reach and apply action cannot obscure the essential nature of the indemnification action, and cannot convert that action into a free-for-all on insurance issues. In short, we will not allow the insurers to bootstrap their coverage defenses into this lawsuit.

The fact that Maine law may preclude the insurers from raising certain defenses during an enforcement proceeding does not alter our conclusion. Even if it were true that Maine law does not allow the insurers to raise certain defenses during an enforcement proceeding, that law reflects a "considered policy judgment" made by the Maine legislature. 690 F.Supp. at 83. If the insurers believe that such a law is unconstitutional, they can make a suitable objection during the enforcement action, whether it is brought in federal court or in state court. We will not permit them, however, to remedy the deficiencies they perceive in Maine's reach and apply statute by invoking Rule 24(a)(2) to drag substantive issues of insurance law into a lawsuit whose subject matter is the allocation of liability among joint tortfeasors.

The third potential interest—obtaining a stay—is basically derived from the prior two interests. For the same reasons that we cited with respect to those two interests, we are unwilling to regard the third interest as cognizable under Rule 24(a)(2). *Cf. Miller v. Shugart,* 316 N.W.2d 729, 733–34 (Minn.1982) (holding that insureds did not breach their obligations under policy's cooperation clause by refusing to delay reaching a settlement until after the coverage issue had been resolved). We do not mean to imply, however, that this interest is unimportant. In fact, we believe that resolving the coverage issue first permits a more adversarial party configuration in the indemnification action and will likely lead to a fairer and more efficient outcome. *See Knapp v. Hankins,* 106 F.Supp. 43, 48 (E.D.Ill.1952); *Miller v. Shugart,* 316 N.W.2d 729, 733 (Minn.1982); *Prahm v. Rupp Construction Co.,* 277 N.W.2d 389, 391 & n. 2 (Minn.1979); *Quentin v. Henderson,* 110 N.Y.S.2d 561, 563–64 (Sup. Ct.1951). The insurer's interest in having coverage resolved first can be effectively protected, however, under Rule 24(b)(2). "A refusal to find a right under Rule 24(a) still leaves open the possibility in an appropriate case of permissive intervention by an insurer under Rule 24(b) for the purpose sought here, while a contrary holding would open the door to such intervention regardless of any unfortunate effect on the course of the main action." *Restor–A–Dent,* 725 F.2d at 876. The weight to be accorded the insurer's interest in having coverage resolved first will vary with the facts of each case, depending on such factors as the extent to which the liability action will be delayed; whether the declaratory judgment action was filed in good faith at the earliest possible time; and whether the liability action was filed to

preempt prior resolution of the coverage issue.

We hold that the insurers did not have a cognizable interest in the subject matter of the lawsuit,[17] and therefore that the district court correctly denied their motions for intervention under Rule 24(a)(2).

■ The other claims for intervention are much weaker, and do not merit detailed discussion. Rule 24(a)(1) is narrowly construed; private parties are rarely given an unconditional right to intervene. *See Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286 (5th Cir.1985); C. Wright, A. Miller, & M. Kane, 7C *Federal Practice & Procedure* § 1906, at 246. Section 113(i) of CERCLA, 42 U.S.C. § 9613(i), states, in pertinent part, that any person may intervene as a matter of right in a CERCLA action "when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede that person's ability to protect that interest." This language simply does not support the insurers' claim that CERCLA affords an unconditional right to intervene, and the insurers have identified nothing in CERCLA's legislative history that indicates that Congress intended to create such a right. To the extent that the statute provides a conditional right of intervention, *see* 7C *Federal Practice & Procedure* § 1910, at 355, the insurers have not met the statutory conditions, which are virtually identical to those required for intervention as of right under Rule 24(a)(2).[18] Finally, the district court enjoys broad discretion in making determinations regarding permissive intervention under Rule 24(b)(2). Reversal of a district court's denial of permissive intervention on grounds of abuse of discretion "is so unusual as to be almost unique." *New Orleans Public Service, Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 471 (5th Cir.) (en banc), *cert. denied sub nom., Morial v. United Gas Pipe Line Co.*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *accord United States Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir.1978); *see also Morgan v. McDonough*, 726 F.2d 11, 15 (1st Cir.1984) (stating that Rule 24(b) determinations are reviewed under a clear abuse of discretion standard). This case simply does not present such unique circumstances.[19] The district court did not abuse its discretion in denying intervention under Rule 24(b)(2).[20]

We *affirm* the district court's denial of the insurers' motions for intervention. Because we have decided that the insurers are not parties to the lawsuit, we do not need to address their request for a stay of the proceedings or their opposition to the district court's decision to enter a consent judgment.

### APPENDIX

### Rule 19. Joinder of Persons Needed for Just Adjudication

**(a) Persons to be Joined if Feasible.** A person who is subject to service of process

---

**17.** For the same reasons stated by the district court, *see* 690 F.Supp. at 82 n. 6, we see no inconsistency between this holding and the holding that the Group members were indispensable parties for purposes of the declaratory judgment action.

**18.** The insurers' argument that no independent jurisdictional basis is necessary with respect to intervention under Rule 24(b)(1) is besides the point, because their motion for intervention under that provision fails not for lack of jurisdiction but for failure to meet the conditions described in the statute.

**19.** We note that the insurers in this case have not, in the alternative, sought to intervene permissively for the limited purpose of obtaining a stay. *See supra* at 25–26; C. Wright, A. Miller, M. Kane, 7C *Federal Practice & Procedure*

§ 1922 (discussing intervention for limited purposes). Even if they had, we think the district court would have been well within its discretion in denying such a request, principally because the primary insurers waited until the terms of the settlement were clear before filing their declaratory judgment action.

**20.** The insurers argue that the district court's ruling should be reviewed under a *de novo* standard because it is based not on an exercise of discretion but rather on legal conclusions regarding subject matter jurisdiction. Even if we were to accept this characterization, we would still reject the argument because we concur in the district court's analysis of the jurisdictional issues.

and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

**(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**Rule 24. Intervention**

**(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.